UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TUMI, INC., | Civ. No. 14-2941 (KM) (JBC) |
| Plaintiff, | |
| | OPINION |
| v. | |
| LEVEL 8 APPAREL, INC., | |
| Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Tumi, Inc. ("Tumi"), brought this action against Level 8 Apparel, Inc. ("Level 8") for breach of a license agreement. The complaint alleges that Level 8 failed to pay royalty fees and violated federal statutes relating to the unauthorized importation and sale of Tumi-branded products after the expiration of a license agreement. Now before the Court is Tumi's unopposed motion for partial summary judgment. Specifically, Tumi seeks summary judgment on Count 1 for breach of contract. For the reasons expressed below, the motion will be granted.

### I.   BACKGROUND[1]

Tumi is a manufacturer and retailer of premium luggage and business accessories. (Plaintiff's Statement of Undisputed Material Facts ("SOF"), Dkt. No. 31-2, ¶1) Tumi owns two trademarks which it uses to brand its products. (*Id.* ¶ 2) Level 8 is an importer and distributor of apparel, including jackets and outerwear. (*Id.* ¶ 3) Tumi enters into licensing agreements with companies that

---

[1]   Background facts are taken from Tumi's Statement of Undisputed, Material Facts submitted in accordance with L. Civ. R. 56.1. (Dkt. No. 31-2) Since Level 8 failed to oppose the motion for summary judgment, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The facts set forth here relate solely to the motion for partial summary judgment as to count 1 for breach of contract.

1

agree to manufacture goods, brand them with Tumi's trademarks, and then market and sell those products. (*Id.* ¶ 2) Tumi and Level 8 entered into such a license agreement on May 1, 2010, which was amended and restated in April of 2012 (the "License Agreement"). (*Id.* ¶ 4; Compl. (Dkt. No. 1) ¶ 11) Pursuant to that agreement, Level 8 was granted the right to use Tumi's trademarks on outerwear through December 31, 2013. (SOF ¶ 5) In exchange, Level 8 undertook to pay Tumi royalty fees based on Level 8's gross sales of Tumi-branded products. (*Id.*)

Section 17 of the License Agreement permitted Tumi, on notice to Level 8, to perform an audit of Level 8's books and records. (License Agreement § 17) In December of 2013, after informing Tumi that it would not extend the Agreement beyond the December 31, 2013 termination date, Tumi performed an audit of Level 8's books and records to verify royalty payments. (SOF ¶¶ 7–8) The audit showed Level 8 had used an improper rate in determining the royalty payments resulting in an underpayment of $263,412. (*Id.* ¶ 9) This amount, plus the fees Level 8 had self-reported as owed (amounting to $320,252.30) and $2,571 to cover the cost of the audit, resulting in an outstanding balance of $586,235. (*Id.*)

Tumi and Level 8 engaged in discussions in February 2014 to create a payment plan for the outstanding royalty fees. (*Id.* ¶ 10) Level 8 confirmed the monthly payment plan in an email on February 13, 2014, whereby Level 8 would pay $50,000 starting in March for four months, and then $100,000 monthly until paid in full. (*Id.* ¶ 11) A representative of Level 8 also acknowledged the debt, stating "we owe this money to you" and represented that Level 8 would "do all that we can to pay this." (*Id.*) On April 11, 2014, Level 8 emailed a royalty report for January through March 2014, reflecting an outstanding debt of $48,896.72 in royalties. (Compl. ¶ 22) Level 8 never made any payments to Tumi. (SOF ¶ 12)

Tumi filed its complaint and an application for a preliminary injunction on May 8, 2014. (Dkt. No. 1) The complaint alleges eight counts, including

2

breach of contract (Count 1), violations of the Lanham Act, 15 U.S.C. § 1114 (Counts 2–6), and violations of New Jersey's trademark and unfair competition statutes, N.J. Stat. 56:3-13:16 and 56:4-1 (Counts 8–9). A hearing on the application for temporary restraints was held on May 21, 2014, at which Level 8 did not appear. (Dkt. No. 11) On June 3, 2014, Level 8 answered the complaint. (Verified Answer and Affirmative Defenses (Dkt. No. 18))

A preliminary injunction hearing was scheduled for June 19, 2014 (Dkt. No. 20), but on June 17, 2014, Level 8 wrote to the Court requesting an adjournment of the hearing. (Dkt. No. 23) In that letter, counsel for Level 8 stated that "our clients are working on a resolution to settle this case since my client does not dispute that money in the form of royalty is due and owing to plaintiff" but that Level 8 disputed the calculation of the amount owed. (*Id.*) The preliminary injunction hearing was adjourned until July 17, 2014. (Dkt. No. 24) On July 17, 2014, a stipulated order for preliminary injunction was entered which enjoined Level 8 from selling, importing, or manufacturing any Tumi-branded products. (Dkt. No. 27)

On September 18, 2014, Tumi filed this motion for partial summary judgment on Count 1 of the complaint. (Dkt. No. 31) Although Level 8 requested (and was granted) an extension until November 3, 2014, to file an opposition (Dkt. No. 35), Level 8 has never submitted any opposition to the motion for summary judgment.

## II.   JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this case presents federal questions because the claims arise under federal statutes.

## III.   LEGAL STANDARDS

### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

If a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56(a). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assocs.*, 922 F.2d at 175)).

### b. Breach of Contract

Under New Jersey law,[2] a breach of contract claim requires proof of three elements: (1) the existence of a valid and enforceable contract, (2) a breach of that contract, and (3) damages. *See Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007). Where the terms of a contract are clear and unambiguous, the Court can properly determine the contract's meaning as a matter of law. *See Bethlehem Steel Corp. v. United States*, 270 F.3d 135, 139 (3d Cir. 2001); *see also City of Orange Twp. v. Empire Mortg. Servs., Inc.*, 775 A.2d 174, 179 (N.J. Super Ct. App. Div. 2001) (noting that under New Jersey law, where the "terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those

---

[2]   The parties do not dispute that the License Agreement is governed by New Jersey law. (Compl. ¶ 16; Answer ¶ 16; License Agreement § 33).

terms as written."). Whether a contract's provisions are clear and ambiguous is a question of law appropriate for summary judgment. *See J.I. Hass Co., Inc. v. Gilbane Bldg. Co.*, 881 F.2d 89, 92 (3d Cir. 1989), *cert denied* 493 U.S. 1080 (1990) (noting that where contract is unambiguous, determination of parties' intent is a question of law); *see also Driscoll Constr. Co., Inc. v. State Dep't of Transp.*, 853 A.2d 270, 276 (N.J. Super. Ct. App. Div. 2004) ("The interpretation or construction of a contract is usually a legal question for the court, suitable for a decision on a motion for summary judgment.").

### IV. ANALYSIS

#### a. License Agreement

There is no dispute as to the existence of the License Agreement. (Answer ¶¶ 11–16) Nor is there a dispute as to the meaning of the terms of the License Agreement. (*Id.* ¶ 32) Under Section 16, Level 8 agreed to pay royalties to Tumi in consideration for the use of the trademarks. (License Agreement § 16) These royalty payments were to be calculated on monthly gross sales at a rate of 10% for product sold at full price and 7% for product sold off-price, except that where off-price sales accounted for more than 30% of gross sales, the royalty rate would be 10% of those off-price sales over 30% of gross sales. (*Id.* § 16.1) Payments of royalty fees were due monthly, by the 25th of the next month. (*Id.*)

Level 8, in its Answer, admitted that the License Agreement provided for Level 8 to use the Tumi marks through December 31, 2013 in exchange for, *inter alia*, royalty payments. (Answer ¶ 12) Level 8 further admitted that it had "acknowledged miscalculations" of the royalty payments and that this miscalculation was later "corrected between the parties." (*Id.* ¶ 20) On February 13, 2014, Level 8 sent Tumi a payment plan, acknowledging the debt owed and promising payment. (Ex. D) Level 8 also admitted that it provided Tumi a royalty report for the months of January through March 2014 reflecting $48,896.72 in royalties. (Answer ¶ 22) Despite their admissions that royalty payments were owed, Level 8 stopped paying royalty fees in August 2013. (*Id.* ¶ 23; Dkt. No. 31-4, Attachment 1)

Level 8 does not deny that it breached its contractual obligation to pay royalty fees. (Answer ¶ 34 ("Deny except that there are certain amount of royalties that are due to TUMI by Defendant but has not yet been paid."))

### b. Damages

The only issue even potentially in dispute is the precise amount of royalty fees due and owing. (Answer ¶ 35; Affirmative Defenses ¶¶ 1–2; Dkt. No. 23) In its summary judgment motion, Tumi claims $586,235 in unpaid royalty fees. In support of that claim, Tumi has submitted documentary evidence, consisting of a January 27, 2014 letter to Level 8 detailing the results of the audit. (Aff. of Wendee Lunt in Support of Motion for Summary Judgment, Ex. B (Dkt. No. 31-4)) That letter sets forth three categories of amounts owed, including:

(1) $320,252.30 in outstanding and unpaid royalty fees as calculated by Level 8 for sales occurring between August 2013 and December 2013, plus interest through the date of the letter;

(2) $263,412.00 in additional royalty fees owed using the correct royalty rate calculation, plus interest through the date of the letter;

(3) $2,571.00 in costs and expenses for performing the audit.

(*Id.*) The letter attaches a number of documents reflecting that Level 8 had stopped paying royalty fees in August 2013, and setting forth the royalty amounts owed and the interest calculations. (*Id.*) Additionally, Tumi has submitted an email from Michael Hong of Level 8, responding to a request for the payment plan for the $586,235 due. (*Id.*, Ex. C) In the email, Mr. Hong sets forth a payment plan where Level 8 will pay $50,000 monthly from March through June, and then $100,000 monthly thereafter until paid in full. (*Id.*) Mr. Hong also states "Please note that we will attach more monies per month when we have extra to add. We owe this money to you and will do all that we can to pay this and additionally." (*Id.*) Nowhere in the email does Mr. Hong dispute the $586,235 calculation.

The Complaint originally sought "at least $ 635,131 in payments owed under a now-terminated license agreement." (Compl. ¶ 1) Level 8's Answer and Affirmative Defenses contested Tumi's calculation of the amounts owed. The Answer stated that the "amounts demanded in the Complaint are improper and incorrect" and that the "amount demanded in the Complaint has been partially/fully paid and/or credits have not been applies and/or adjusted for." (Affirmative Defenses ¶¶ 1–2)  Level 8 has submitted no further evidence, or even any further allegations, as to how Tumi's calculation might be incorrect or as to the credits to which Level 8 believes it is entitled. A mere denial in Level 8's Answer cannot overcome the documentary evidence submitted by Tumi.[3] *See Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (party opposing summary judgment "may not rest upon the mere allegations or denials of the … pleading" but "must set forth specific facts showing that there is a genuine issue for trial") (citing Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586).

In short, I am satisfied that Level 8's Answer and Affirmative Defenses do not create a genuine issue of material fact sufficient to defeat the motion for summary judgment. *See Celotex*, 477 U.S. at 324.

## V. CONCLUSION

For the reasons set forth above, Tumi's unopposed motion for summary judgment is **GRANTED**. Judgment will be entered in the amount of $586,235.

_[signature]_
**KEVIN MCNULTY, U.S.D.J.**

Date:  November 25, 2015

---

[3]  Strictly speaking, Level 8's denial of the accuracy of the original $625,131 figure is not even consistent with the proofs submitted by Tumi in its motion. The summary judgment motion demands not $625,131 but $586,325.

8